No. 46,904

HAROLD A. STICKNEY and RICHARD L. McMILLAN, d/b/a Air Control Co., *Appellees*, v. MURDOCK STEEL AND ENGINEERING, INC., and ST. PAUL FIRE AND MARINE INSURANCE COMPANY, *Appellants*.

(512 P. 2d 839)

Opinion filed July 14, 1973.

*Lelyn J. Braun*, of Garden City, argued the cause and was on the brief for the appellants.

*Daniel J. High*, of Calihan, Green, Calihan and High, of Garden City, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action to foreclose a mechanic's lien. The only question presented to the trial judge, who heard the matter without a jury, was whether or not the mechanic's lien was filed within ninety (90) days from the date material or labor was last supplied by the plaintiffs to the project in question. The trial judge determined the lien to be valid.

On appeal the controlling question is whether the findings of the trial court are supported by the evidence.

Pertinent findings and conclusions of the trial court are:

"1. That on the 30th day of July, 1968, Murdock Steel and Engineering, Inc. entered into a written contract with B & B Implement, Inc., of Scott City, Kansas, for the turnkey erection of a Butler Steel Building on premises of B & B Implement, Inc. in Scott County, Kansas.

"2. That said contract provided for certain electrical work to be furnished, which work was sub-contracted by Murdock Steel and Engineering, Inc. to plaintiffs, Harold A. Stickney and Richard L. McMillan, d/b/a Air Control Co. under an oral agreement with certain written specifications and working drawings which were changed from time to time by the parties.

"3. That the reasonable value of services performed and material supplied by said plaintiffs to the project under their sub-contract is the sum of Eight Thousand Nine Hundred Seventy-Five ($8,975.00) Dollars.

"4. That the major portion of work under plaintiffs' sub-contract was completed during January, 1969, there remaining unfinished at that time the

installation of a water fountain and the cabling and wiring of a pilot switch on the outer wall of a hydraulic room.

"5. That B & B Implement, Inc., owner of the project, did not and would not accept the project as completed until both items were finished to the satisfaction of said owner.

"6. That the water fountain was received by plaintiffs from their supplier on the 22nd day of July, 1969, and was installed shortly thereafter.

"7. That the switch on the outside wall of the hydraulic room was cabled and wired on or about the 15th day of October, 1969, and upon its being properly wired, the plaintiffs' portion of the contract was for the first [time] accepted by the owner.

\* \* \* \* \*

"9. That no additional charge was made by plaintiffs to either the owner or prime contractor for the water fountain or switch work, and that both of said items were part of the work required under the parties' original contract and were included in the contract price.

"10. That the defendant St. Paul Fire & Marine Insurance Company issued a Performance Bond, on October 4, 1968, bearing # 400 BL 0318, which bond provides protection to the owner of the project, B & B Implement Co., Inc. from mechanic's liens.

"11. That on the 13th day of November, 1969, the plaintiffs filed and properly perfected in the Office of the Clerk of the District Court of Scott County, Kansas, their verified lien statement in the sum of Seven Thousand Five Hundred Twenty-nine and 86/100 ($7,529.86) Dollars, against the premises of B & B Implement, Inc., [describing the property].

"The Court concludes as follows:

"1. The crucial matter to be determined is whether the work performed by plaintiff in connecting and wiring the switch and pilot light on the outside wall of the hydraulic room was a part of the original contract requirement, and if so, whether such work was done in good faith and not merely as a sham to extend the filing time on plaintiffs' mechanic's lien.

"2. The Court concludes that although in relation to the entire project, the switch work was a minor item, the same was essential to satisfactory completion of the original project, and that the work on such switch in October, 1969 was not in the nature of repair, but rather was original installation and work, necessary to complete the job and receive owner acceptance and approval of the work.

"3. The Court concludes that the mechanic's lien of plaintiff filed on the 13th day of November, 1969, was properly perfected and is a valid existing lien against the premises described therein.

"4. The Court concludes that the same should be foreclosed, and that the liability of the defendant St. Paul Fire & Marine Insurance Company under Bond # 400-BL0318 wherein they undertake to indemnify and/or protect the owner from mechanic's liens is absolute at this time as to the amount stated in the mechanic's lien.

"5. The Court concludes that the balance of Plaintiffs' claim, the sum of $1,445.14, should be allowed only against Murdock Steel and Engineering Co., Inc."

Murdock Steel and Engineering, Inc., and St. Paul Fire & Marine Insurance Company (defendants-appellants) contend the trial court erred: (1) In finding that the switch was part of the original contract thereby extending the time for filing the lien; (2) in finding that the lien filed in November, 1969, was filed within the statutory time as provided for by K. S. A. 60-1103, as amended; and (3) in overruling Murdock Steel's motion for additional findings and in particular that the work performed by appellees was not done within a "reasonable time."

The evidence disclosed the substantial portion of the work under the appellees' subcontract was completed during January, 1969. Following completion of the major portion of the work under the subcontract for electrical, plumbing, and heating aspects of the project, two matters remained unfinished. The first involved a water cooler which did not function correctly. The other item dealt with a light switch on the pump room. The pump room was sealed so as to be dust free. The building owner wanted a pilot light on the outside wall switch which would indicate to someone outside the room when lights were on within the room. He felt this to be an important feature to his operation.

At that time it was determined the switch had not been cabled at the time of the original installation and the subcontractor did not have the wiring necessary to complete the job along with him on the trip.

The subcontractor returned to Scott City, a distance of 35 miles from his place of business at Garden City, on the 15th day of October, 1969, and completed the cabling of the additional wire necessary to properly install the pilot light switch, wired the switch, and received word from the building owner that he then considered the subcontractor's work under the original contract to have been satisfactorily concluded.

The work on the pilot light switch did not involve the replacement of work which functioned properly after initial installation and then became defective. Rather, the work was simply not done completely at the time of initial installation by the subcontractor. The work necessary to properly wire the switch involved cabling, as well as wiring the switch.

The *building owner* considered the switch and the water cooler to be part of the original contract and felt that such work was not finished until October, 1969. No charge was made for the work,

aside from the billing rendered in connection with the original subcontract.

Our decision in *Benner-Williams, Inc. v. Romine*, 200 Kan. 483, 437 P. 2d 312, is controlling. There the court said:

". . . The test, under K. S. A. 1967 Supp. 60-1101, as to the time when a piece of work is completed in order to preserve a lien, is whether the unfinished work was a part of the work necessary to be performed under the terms of the original contract to complete the job and comply in good faith with the requirements of the contract. (Citing cases.) The 'end splash,' for which no additional charge was made, was part of the original contract, and its installation was necessary to complete the job. It is unrefuted that the delay in installation arose because of the lack of material, rather than any bad faith on the part of the appellee." (p. 487.)

The foregoing rule was approved in *Berthot v. Stroble*, 208 Kan. 839, 494 P. 2d 1133.

It has been recognized that where a contract to furnish material is to be regarded as completed, a subsequent gratuitous furnishing of material in the nature of a substitution or replacement to remedy a defect in the material originally delivered will not operate to extend the time within which to file a mechanic's lien. But a demand of the owner for a substitution or replacement of material insisting that the contract is not complete and acceptable owing to some imperfection will operate to permit the contractor to continue the contract so as to include the date of the replacement of the material, and to validate a mechanic's lien filed within the statutory period thereafter (53 Am. Jur. 2d Mechanic's Liens, §·203).

In the instant case the owner did not regard the original contract as complete until the pilot switch was properly functioning, and the trial court found the appellees were not acting in bad faith to extend the time for the filing of a lien.

Because of the distance involved between the appellees' place of business and the job site (Garden City to Scott City), some delay was encountered. The water cooler was not available from the supplier until July, 1969, and when it arrived the subcontractor installed it within a week. The subcontractor planned to replace the switch at the same time on the same trip, but found the problem encountered was not that of a defective switch, but a failure to run a necessary cable. The necessary materials to complete this task were not with him at that time, and he waited until he again had occasion to be in Scott City. At no time has the owner of the

building alleged bad faith on the part of the appellees, nor does the record contain any such assertion.

The record discloses substantial competent evidence to support the trial court's findings that the additional work on the switch was part of the original contract, thereby extending the time for filing the mechanic's lien. Accordingly, the lien filed in November, 1969, was filed within the statutory time as provided in K. S. A. 1972 Supp. 60-1103.

Appellant Murdock Steel and Engineering, Inc., filed a motion for an additional finding of fact on June 9, 1971, after the trial court's decision herein. The motion prayed that the court find the lien was obtained through bad faith, neglect, inadvertance and unreasonable delay, and was filed out of time. The trial court denied the motion. The record affirmatively supports the trial court's finding that the work on the switch and pilot light was done in good faith and not merely as a sham to extend the filing time on their lien. We find no merit in the appellant's contention.

The judgment of the lower court is affirmed.

FROMME, J., not participating.